No. ——

First Circuit

QUINE v. STOCKWELL

(June 7, 1927. Opinion and Decree.)

*(Syllabus by the Editor.)*

1. Louisiana Digest—Automobiles—Par. 4, 8.

Where the testimony of the plaintiff and the surrounding circumstances show

that the defendant was speeding far in excess of the limit imposed by law, which speed caused him to lose control of the truck and collide with plaintiff's auto, the defendant was negligent and liable for the damages resulting. (See Article 2315, Civil Code. Editor's note.)

Appeal from East Baton Rouge. Hon. Carruth Jones, District Judge.

Action by John E. Quine against Silas L. Stockwell.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Chas. A. Battle, of Baton Rouge, attorney for plaintiff, appellee.

Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for defendant, appellant.

MOUTON, J.   Laurel Street runs east and west across the city of Baton Rouge. Waller Street runs north and south toward Boulevard Street, another street of the city. Plaintiff was driving his automobile on Waller Street and was going northward. Willie Odom was driving a Dodge truck for defendant, going westward towards the river. A collision occurred between the auto and the truck, at the intersection of Waller and Laurel Streets.

Plaintiff says he was going at about 10 or 12 miles an hour when he got to the south line of Laurel Street. His wife, who was in the car with him, testified practically to the same effect. It appears from the evidence that plaintiff had just started on his way at a short distance from Laurel Street, from which fact it is but fair to infer that he had not as yet attained a fast rate of speed when he reached Laurel Street. There is nothing in the record which indicates that plaintiff was in the habit of driving his auto at a more rapid rate of speed than from 10 to 14 miles an hour, and we have, therefore, no hesitancy in concluding that he was traveling at 10 or 12 miles an hour when he got to Laurel Street. He says, when he neared the southeast corner of Waller Street where it intersects with Laurel Street, he saw the Dodge truck coming on Laurel Street from the east, and going towards the river. Much is said in the evidence about the Hernandez grocery store which stands at the southeast corner of Waller Street, as being an obstruction to the vision of anyone looking from that corner along Laurel Street on the east side of Waller Street. The proof shows that there is a space of not less than ten feet from the corner of that store to the south line of Laurel Street. It is therefore certain that when plaintiff reached that corner on Waller Street, he could, in that opening, see the Dodge truck Odom was driving westward on Laurel Street. The fact is that Odom says he saw plaintiff when he came up with his auto to that corner, and another witness who was coming behind the truck in an auto, also says he saw plaintiff's auto at that corner. If they saw plaintiff at that corner, for a stronger reason could plaintiff see the Dodge truck through the opening or space at the corner. He says when he got to Laurel Street he saw the truck which was then about half a block or further on Laurel Street; that he concluded if it was coming along at a reasonable rate of speed he could negotiate Laurel Street before the truck would reach that street.

His testimony shows that plaintiff, after getting in Laurel Street, accelerated his speed so that he might get across in time to avoid a collision with the truck which was advancing on him. We do not think plaintiff can be charged with want of ordinary care or negligence because he attempted to cross that street, basing himself on the assumption that he could negotiate 'it before the truck got there, if it were being driven at a usual rate of speed. We see no negligence on the part of plaintiff in that respect, although he knew, as testified to by him, that, under the ordinance of the city of Baton Rouge, the truck had the right of way over that street, as he had the right to expect that the truck would be kept within the speed limit of 15 or 18 miles an hour, as fixed in the ordinance. Plaintiff says that he thought he could go across Laurel Street in time, and that as a matter of fact he had made the crossing or was on the point of making it when the truck struck the rear right-hand wheel of his auto. He says that the blow of the truck on his auto killed his engine. His wife testifies to about the same, excepting as to the killing of the engine, to which she did not testify.

Clarence Hernandez, who was working for his mother at the Hernandez store at the corner of Waller Street, testified in the case. He says he was working at the end of his mother's lot, which runs about 100 feet, and heard the crash of the cars when the collision occurred; that he came out of the store and went to the scene of the wreck. He says that plaintiff's car was, after the wreck, in Waller Street, clear of Laurel Street about two feet; that it was at an angle of 45 degrees pointing about northeast. Plaintiff said his car had been knocked between 6 and 10 feet from Laurel Street. There is evidently a discrepancy between the evidence of these two witnesses as to the distance plaintiff's car was from Laurel Street after the accident. It is shown, however, by the testimony of Hernandez, that it stood about two feet from that street and was facing northeastward. The fact that the car stood there harmonizes with the evidence of the plaintiff when he says that his auto was struck as he was crossing the street or had crossed, his engine being killed about that time, when his auto was hit. On the other hand, Odom, the driver of the truck, says when he came into Laurel Street and saw that he was about at the moment of colliding with plaintiff, that, in order to avoid the collision, he swerved his car to the left as much as he could to pass in plaintiff's rear, but that he failed and struck plaintiff's auto on the side, at or near the rear. He says he collided with the auto at about the center of Laurel Street. If he struck the car in an attempt to pass in its rear, it is evident that he must have given it a glancing blow. Laurel Street, the evidence shows, is about 50 or 60 feet wide. From its center there would be a distance of some 25 or 30 feet to the north line of that street. It is possible, but it does not seem probable, that a glance blow, and much less a straight blow, would have sent plaintiff's car forward or sideways at a distance of about 25 or 30 feet in Laurel Street. It is more natural, and it comports better with the facts of the case, to accept the version of the plaintiff that Odom lost control of the truck, due in all likelihood to the undue speed at which plaintiff says he was traveling, swerved the truck along the north line of

Laurel Street, and struck plaintiff's auto, killing its engine, and knocking it about three feet into Laurel Street, where it was seen standing by Hernandez immediately after the accident.

Odom, as a witness, says he was coming down Laurel Street between 15 and 18 miles an hour; that he did not slow down very much for the corner because he had the right of way. He testifies that plaintiff was going at such a rate of speed "there was nothing else to do but hit him". The preponderance of the evidence is clearly to the effect that plaintiff was not traveling at such a rate of speed. Odom admits he did not slow down very much when he came up to Laurel Street because he had the right of way. There can be no doubt that the crash between the autos must have been terrific, as Hernandez, who was then busy in the back yard of the store over one hundred feet away, came out and went immediately to the scene of the collision.

Grant Payne, another witness, says he was behind the store, heard the noise, which he says was pretty loud, and in about a minute's time came out of the store, and went to the scene. As the evidence shows that the blow was from the truck, it is but fair to infer that it was then traveling at a considerable velocity or speed to have produced a noise resulting from the crash, that had the effect of immediately drawing two busy men from the rear of their store to the scene of the wreck. Circumstances of this character surrounding the occurrence lend support to the testimony of the plaintiff that Odom was traveling at the time at a speed far in excess of the limit imposed by the ordinance of the city of Baton Rouge, and which, we believe, in all probability, caused him to lose control of the truck, causing it to swerve to the northern line of Laurel Street, thus colliding with plaintiff's auto, knocking it about two feet from that street into Waller Street, inflicting the damages for which defendant was correctly held liable.